IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. **5:26-CT-3196-BO**

SARA LEWIS, individually and as Administrator of the ESTATE OF JARED LAKE LEWIS,

Plaintiff,

v.

WAKE COUNTY, NORTH CAROLINA; WILLIE ROWE, Wake County Sheriff, in his individual and official capacities, GENE DAIL BUTLER, JR., Director of the Wake County Detention Center, in his individual capacity; OBINNAYA UMESI, Medical Director of Wake County Detention Center, in his individual capacity; OHIO CASUALTY INSURANCE COMPANY; CANDACE CALKINS, in her individual capacity; MARY ANNE VILLAREAL, in her individual capacity; ERNST BARJON, in his individual capacity; ANGELA BETHEA, in her individual capacity; NAN AYE AYE AUNG THANT, in her individual capacity; RUTH OLAITAN, in her individual capacity; CHRISTIANA ANUMUDU, in her individual capacity; KERRY DUHANEY, in her individual capacity; PRISCA UMEH, in her individual capacity; GEMMA DINGLE, in her individual capacity; RUBY DULAY, in her individual capacity; TOYIN DAODU, in her individual capacity,

Defendants.

**ANSWER OF DEFENDANT CANDACE CALKINS**

Defendant Candace Calkins ("Nurse Calkins") responds to Plaintiff's Complaint as follows:

## FIRST DEFENSE
## RESPONSE TO STATEMENT OF THE CASE

Plaintiff's Statement of the Case is an inaccurate, slanted depiction of the facts that is contradicted by Mr. Lewis' medical records. According to Mr. Lewis' medical records, he was not placed in the general jail population but was instead placed in the medical observation unit where he was monitored for diabetes and hypotension. Mr. Lewis was provided diabetes management medications on a daily basis including Metformin and Farxiga and was administered blood glucose ACCU Checks many times throughout his detention. When Mr. Lewis arrived at the Wake County Detention Center, his blood glucose level was 193 mg/dL and was lower each time it was checked by the nursing staff during his stay until the day he was sent to the hospital. In fact, even when Mr. Lewis was sent to Wake Med Emergency on July 16, 2024, his blood glucose level was only 164 mg/dL. Contrary to Plaintiff's grossly misleading Statement of the Case, if insulin were administered to Mr. Lewis with his recorded blood glucose levels, he would have likely suffered from a rapid and dangerous drop in blood glucose levels, resulting in severe hypoglycemia. To the extent a response is required to the soliloquy contained in the Complaint, Nurse Calkins denies Plaintiff's allegations contained within the Statement of the Case.

## SECOND DEFENSE
## RESPONSE TO ALLEGATIONS

1-2. The allegations of paragraphs 1-2 of the Complaint are admitted upon information and belief.

3. With regard to the allegations of paragraph 3 of the Complaint, Nurse Calkins admits Wake County is a county within North Carolina which was created by the General Assembly and only has such duties as were placed upon it by statute. Nurse Calkins further admits that Sheriff Rowe is an elected official and a constitutional officer. Sheriff Rowe is the keeper of the jail pursuant to N.C.G.S. § 162-22 and other applicable statutes. Except as herein admitted, the allegations of paragraph 3 are denied.

4. With regard to the allegations of paragraph 4 of the Complaint, Nurse Calkins admits that Sheriff Rowe is the duly elected Sheriff of Wake County and is a constitutional officer. Sheriff Rowe is the keeper of the jail and employer of the detention officers and medical care providers who work there and has such statutory duties as were placed upon him by North Carolina law. Except as herein admitted, the allegations of paragraph 4 are denied.

5. With regard to the allegations of paragraph 5 of the Complaint, Nurse Calkins admits Defendant Butler is an employee of Sheriff Rowe who worked at the Wake County Detention Center as the director. Except as herein admitted, the allegations of paragraph 5 are denied.

6. With regard to the allegations of paragraph 6 of the Complaint, Nurse Calkins admits Dr. Umesi is a physician, a healthcare provider and is, and was, employed by Sheriff Rowe as the medical director of the Wake County Detention Center. Except as herein admitted, the allegations of paragraph 6 are denied.

7. Nurse Calkins lacks sufficient knowledge to admit or deny the allegations of paragraph 7 of the Complaint and the same are therefore denied.

8. With regard to the allegations of paragraph 8 of the Complaint, Nurse Calkins admits she is a resident of Johnston County, employed by Sheriff Rowe and works at the Wake County Detention Center as a nurse. Except as herein admitted, the allegations of paragraph 8 are denied.

9. With regard to the allegations of paragraph 9 of the Complaint, Nurse Calkins admits Nurse Villareal was employed by Sheriff Rowe and worked at the Wake County Detention Center as a nurse. Except as herein admitted, the allegations of paragraph 9 are denied.

10. With regard to the allegations of paragraph 10 of the Complaint, Nurse Calkins admits Nurse Barjon was employed by Sheriff Rowe and worked at the Wake County Detention Center as a nurse. Except as herein admitted, the allegations of paragraph 10 are denied.

11. With regard to the allegations of paragraph 11 of the Complaint, Nurse Calkins admits PA Bethea is a licensed physician's assistant (physician's associate), was employed by Sheriff Rowe and worked at the Wake County Detention Center. Except as herein admitted, the allegations of paragraph 11 are denied.

12. With regard to the allegations of paragraph 12 of the Complaint, Nurse Calkins admits Nurse Thant was employed by Sheriff Rowe and worked at the Wake County Detention Center as a nurse. Except as herein admitted, the allegations of paragraph 12 are denied.

13. With regard to the allegations of paragraph 13 of the Complaint, Nurse Calkins admits Nurse Olaitan was employed by Sheriff Rowe and worked at the Wake County Detention Center as a nurse. Except as herein admitted, the allegations of paragraph 13 are denied.

14. With regard to the allegations of paragraph 14 of the Complaint, Nurse Calkins admits Nurse Anumudu was employed by Sheriff Rowe and worked at the Wake County Detention Center as a nurse. Except as herein admitted, the allegations of paragraph 14 are denied.

15. With regard to the allegations of paragraph 15 of the Complaint, Nurse Calkins admits Nurse Duhaney was employed by Sheriff Rowe and worked at the Wake County Detention Center as a nurse. Except as herein admitted, the allegations of paragraph 15 are denied.

16. With regard to the allegations of paragraph 16 of the Complaint, Nurse Calkins admits Nurse Umeh was employed by Sheriff Rowe and worked at the Wake County Detention Center as a nurse. Except as herein admitted, the allegations of paragraph 16 are denied.

17. With regard to the allegations of paragraph 17 of the Complaint, Nurse Calkins admits Nurse Dingle was employed by Sheriff Rowe and worked at the Wake County Detention Center as a nurse. Except as herein admitted, the allegations of paragraph 17 are denied.

18. With regard to the allegations of paragraph 18 of the Complaint, Nurse Calkins admits Nurse Dulay was employed by Sheriff Rowe and worked at the Wake

County Detention Center as a nurse. Except as herein admitted, the allegations of paragraph 18 are denied.

19. With regard to the allegations of paragraph 19 of the Complaint, Nurse Calkins admits Nurse Daodu was employed by Sheriff Rowe and worked at the Wake County Detention Center as a nurse. Except as herein admitted, the allegations of paragraph 19 are denied.

20-24. Nurse Calkins admits the allegations of paragraphs 20-24 of the Complaint.

25. With regard to the allegations of paragraph 25 of the Complaint, Nurse Calkins admits Mr. Lewis was a 52-year-old male with a history of diabetes mellitus type 2 controlled, hypotension, depression, obesity, and seizures. Nurse Calkins further admits that Mr. Lewis was transferred to WakeMed during his detention. Except as herein admitted, the allegations of paragraph 25 are denied.

26. The allegations of paragraph 26 are denied as Mr. Lewis was medically monitored and properly treated throughout his detention. He received daily diabetes medications including Metformin and Farxiga and his blood sugar was checked 15 times during his detention. As a result, Mr. Lewis showed improved blood glucose levels until the last day of his detention at which point he was sent to the hospital. Except as herein admitted, denied.

27. Nurse Calkins admits Mr. Lewis was admitted to the ICU the week prior due to seizures and that Mr. Lewis had chronic type II diabetes that was monitored through daily and sometimes multiple times a day blood glucose testing and medication management throughout his detention. Nurse Calkins further admits that Mr. Lewis was

promptly transferred to WakeMed upon signs of an emergent medical condition which occurred nine days after he was detained. Except as herein admitted, the allegations of paragraph 27 are denied.

28. The allegations of paragraph 28 of the Complaint are not directed towards Nurse Calkins. To the extent a response is required, Nurse Calkins denies the allegations of paragraph 28.

29. Nurse Calkins lacks sufficient information to admit or deny the allegations of paragraph 29 of the Complaint and the same are therefore denied.

30. With regard to the allegations of paragraph 30 of the Complaint, Nurse Calkins admits Mr. Lewis had type II diabetes and took Metformin. Except as herein admitted, Nurse Calkins lacks sufficient information to admit or deny the allegations of paragraph 30 and the same are therefore denied.

31. Nurse Calkins lacks sufficient information to admit or deny the allegations of paragraph 31 of the Complaint and the same are therefore denied.

32. With regard to the allegations of paragraph 32 of the Complaint, Nurse Calkins admits Mr. Lewis was prescribed Farxiga and was hospitalized in the weeks prior to his arrest. Except as herein admitted, Nurse Calkins lacks information to admit or deny the allegations of paragraph 32 and the same are therefore denied.

33. With regard to the allegations of paragraph 33 of the Complaint, Nurse Calkins admits Mr. Lewis was admitted to the ICU prior to his arrest and was prescribed Farxiga. Except as herein admitted, Nurse Calkins lacks information to admit or deny the allegations of paragraph 33 and the same are therefore denied.

34-39. With regard to the allegations of paragraphs 34-39 of the Complaint, Nurse Calkins admits, upon information and belief, that Mr. Lewis was arrested for taking indecent liberties with a minor under the age of 13 and for first degree child sexual assault. Nurse Calkins lacks sufficient information to admit or deny the remaining allegations of paragraphs 34-39 and the same are therefore denied.

40. Nurse Calkins was not involved in the interaction alleged in paragraph 40 of the Complaint. According to Mr. Lewis' medical records, Mr. Lewis was immediately evaluated by Nurse Calkins on July 8, 2024 upon arrival at the Wake County Detention Center. Nurse Calkins conducted an intake nursing assessment, took vital signs, and administered medication including Trazodone 100 mg, Rosuvastatin Calcium 10 mg, Levetiracetam 500 mg, Buspirone 10 mg to Mr. Lewis. Except as herein admitted, the allegations of paragraph 40 are denied.

41. Nurse Calkins admits she conducted an intake screening was conducted and Mr. Lewis reported he had type II diabetes, had recently been hospitalized for seizures and used insulin but could not recall the name. Nurse Calkins admits she also conducted a mental health screen and provided a consent to release medical information. Except as herein admitted, the allegations of paragraph 41 are denied.

42. Nurse Calkins admits she tested Mr. Lewis' blood sugar via finger stick, which showed a reading of 193 mg/dL at 7:48 pm on July 8, 2024. Except as herein admitted, the allegations of paragraph 42 are denied.

43. Nurse Calkins admits she called CVS and was informed Mr. Lewis was prescribed Tresiba 20 units. This medication was not stocked in the detention center formulary. Except as admitted, the allegations of paragraph 43 are denied.

44. Nurse Calkins admits she called CVS and spoke with "Ayma" verified Mr. Lewis was prescribed 20 units daily Tresiba. Nurse Calkins then informed Mr. Lewis that Tresiba is not carried by the detention center and requested he ask his wife to bring his prescription to be administered. Nurse Calkins placed Mr. Lewis in the medical observation unit until seen by a provider, bottom bunk bed, ordered blood pressure checks before breakfast and dinner, and a diabetic diet. Except as herein admitted, the allegations of paragraph 44 are denied.

45. Nurse Calkins admits she requested Tresiba be brought to the detention center by Mr. Lewis' wife to be administered. Additionally, Nurse Calkins placed Mr. Lewis was placed in medical observations unit, ordered blood pressure checks before breakfast and dinner, a diabetic diet, and to be seen by a provider. Following his initial blood glucose check of 193 mg/dL, Mr. Lewis blood sugar went down consistently throughout his detention based on the administration of medications and the provision of a diabetic diet. Except as herein admitted, the allegations of paragraph 45 are denied.

46. Nurse Calkins was not involved in the interaction alleged in paragraph 46 of the Complaint. According to Mr. Lewis' medical records, Dr. Umesi reviewed and signed off on Nurse Calkins' intake screening, notes and medical recommendations. Additionally, Dr. Umesi approved the recommendation for a mental health evaluation.

Except as herein admitted, the allegations of paragraph 46, including the footnote, are denied.

47. Nurse Calkins was not involved in the interaction alleged in paragraph 47 of the Complaint. According to Mr. Lewis' medical records, at 4:25 AM on July 9, 2024, Nurse Villareal administered an ACCU Check (a blood glucose test) showing a blood sugar level of 154 mg/dL which was a substantial improvement from the time of admission. Nurse Villareal also administered Metformin 1000 mg, Farxiga 10 mg, Escitalopram Oxalate 20 mg, Buspirone 10 mg, Fludrocortisone Acetate .1 mg, Levetiracetam 500 mg. At 10:28 AM on July 9, 2024, Nurse Barjon took Mr. Lewis' vital signs on July 9, 2024 sitting 127/87. Then at 11:20 AM Nurse Barjon took Mr. Lewis' supine blood pressure showing 164/100, sitting 143/88 and standing 94/67. Mr. Lewis was placed in medical observation unit partly due to orthostatic hypotension and was actively monitored. Mr. Lewis was alert and oriented, advised to drink plenty of fluids and avoid sudden movements. He confirmed understanding these directions and did not voice any other issues. Except as herein admitted, the allegations of paragraph 47 are denied.

48. Nurse Calkins was not involved in the interaction alleged in paragraph 48 of the Complaint. According to Mr. Lewis' medical records, PA Bethea conducted a Comprehensive Physical Examination of Mr. Lewis. PA Bethea found Mr. Lewis' general appearance was alert and orientated, his muscular skeletal extremities were in full range of motion without obvious weakness or edema, and his cardiovascular, gastrointestinal, respiratory lymphatic, and neurological examinations were all within

normal limits. PA Bethea recommended Mr. Lewis continue his current regime, which included Metformin and Farxiga. Except as herein admitted, the allegations of paragraph 48 are denied.

49. Nurse Calkins was not involved in the interaction alleged in paragraph 49 of the Complaint. According to Mr. Lewis' medical records, Mr. Lewis was provided with Metformin and Farxiga for diabetes management. He was also prescribed and administered Fludrocortisone Acetate for hypotension, Levetiracetam for seizures, Rosuvastatin Calcium for cholesterol management, and Trazodone, Buspirone, Escitalopram Oxalate for sleep and mental health. Except as admitted, the allegations of paragraph 49, including the footnote, are denied.

50. With regard to the allegations of paragraph 50 of the Complaint, Nurse Calkins admits she provided medical care to Mr. Lewis on his first day of detention, July 8, 2024. Nine days before Mr. Lewis was transferred to the hospital, Nurse Calkins performed an intake screening, obtained Mr. Lewis' history of diabetes, hypotension and newly diagnosed seizures. Nurse Calkins informed Mr. Lewis that Tresiba is not carried by the detention center and requested he ask his wife to bring his prescription to be administered. Nurse Calkins placed Mr. Lewis in the medical observation unit until seen by a provider, bottom bunk bed, ordered blood pressure checks before breakfast and dinner, and a diabetic diet. Except as herein admitted, the allegations of paragraph 50 are denied.

51. With regard to the allegations of paragraph 51 of the Complaint, registered nurses, including Nurse Calkins, do not prescribe medication and only administer

medication as ordered. According to Mr. Lewis' medical records, Mr. Lewis' blood-glucose levels were checked through ACCU Checks 15 times in the 9 days he was detained. His blood-glucose level at intake was initially 193 mg/dL and was between 96-164 mg/dL all other times. Additionally, Mr. Lewis was prescribed Metformin 1000 mg and Farxiga for diabetes management. He was administered Metformin twice daily except for the three evenings, including the afternoon of July 9, 2024, which was due to his court appearance. Except as herein admitted, the allegations of paragraph 51 are denied.

52. Nurse Calkins was not involved in the interaction alleged in paragraph 52 of the Complaint. According to Mr. Lewis' medical records, Nurse Villareal took Mr. Lewis' ACCU Check and noted his blood-glucose improved to 154 mg/dL (from 193 mg/dL). Nurse Villareal administered Metformin 1000 mg, Farxiga 10 mg, Levetiracetam 500 mg, Fludrocortisone Acetate .1 mg, Escitalopram Oxalate 20 mg, and Buspirone 10 mg. Except as herein admitted, the allegations of paragraph 52 are denied.

53. Nurse Calkins was not involved in the interaction alleged in paragraph 53 of the Complaint. According to Mr. Lewis' medical records, Mr. Lewis denied dizziness, headaches and lightheadedness on the morning of July 10, 2024 to Nurse Thant and was administered including Metformin 1000 mg, Farxiga 10 mg, Levetiracetam 500 mg, Fludrocortisone Acetate .1 mg, Escitalopram Oxalate 20 mg, and Buspirone 10 mg and his blood pressure was 126/68 mmHg. At 4:52 pm, Mr. Lewis denied any concerns to Nurse Olaitan and was administered Metformin 1000 mg and his blood pressure was 100/60 mmHg. In the evening, Mr. Lewis reported that morning he had dizziness and his

blood pressure was checked at time as 104/52 mmHg. Except as herein admitted, the allegations of paragraph 53 are denied.

54. Nurse Calkins was not involved in the interaction alleged in paragraph 54 of the Complaint. According to Mr. Lewis' medical records, Mr. Lewis' blood glucose levels were monitored before breakfast of 116 mg/dLand dinner of 142 mg/dL, and he was provided Metformin 1000 mg in the morning and evening on July 10, 2024 as prescribed. Except as herein admitted, the allegations of paragraph 54, including the footnote, are denied.

55. Nurse Calkins was not involved in the interaction alleged in paragraph 55 of the Complaint. According to Mr. Lewis' medical records, on July 12, 2024 before 1:42 am, Nurse Duhaney was called to Mr. Lewis' cell for assistance after he tried to make it to the bathroom but "blacked out" and fell. Mr. Lewis was alert, able to get to seated position independently, offered a wheelchair for safety with mobility, and in no apparent distress. Nurse Duhaney noted no bleeding or hematomas and Mr. Lewis denied hitting his head. She placed an order for a wheelchair. Plaintiff then cherry-picks a note from July 15 that Nurse Duhaney documented "no signs of hypoglycemia or hyperglycemia" ignoring that Mr. Lewis was administered a blood glucose test before dinner that day showing a level of 96 mg/dL, which was excellent and well within normal limits. Except as herein admitted, the allegations of paragraph 55 are denied.

56. Nurse Calkins was not involved in the interaction alleged in paragraph 56 of the Complaint. According to Mr. Lewis' medical records, Mr. Lewis did not report any diarrhea or nausea to any medical provider on July 13, 2024. Further, his records show

his blood glucose before breakfast was 109 mg/dL and before dinner was 101 mg/dL, both excellent scores and well within the target range for diabetics. Except as herein admitted, the allegations of paragraph 56 are denied.

57. Nurse Calkins was not involved in the interaction alleged in paragraph 57 of the Complaint. According to Mr. Lewis' medical records, he did not report any diarrhea or nausea or ask when he could see a doctor to Nurse Umeh. Except as herein admitted, the allegations of paragraph 57 are denied.

58. Nurse Calkins was not involved in the interaction alleged in paragraph 58 of the Complaint. According to Mr. Lewis' medical records, he did not complain to Nurse Umeh about "worsening symptoms" or exhibit any signs of DKA. Mr. Lewis' ACCU Check levels were 109 mg/dL before breakfast and 101 mg/dL before dinner, he was calm and cooperative with no complaints. Nurse Umeh also administered his prescribed medications of Metformin, Buspirone, Escitalopram, Farxiga, Fludrocortisone, and Levetiracetam. Except as herein admitted, the allegations of paragraph 58 are denied.

59. With regard to the allegations of paragraph 59 of the Complaint, Nurse Calkins admits Nurse Dingle evaluated Mr. Lewis on July 13, 2024 and documented that Mr. Lewis had reported symptoms of dizzy spells and some blurry vision to the provider, denied chest pain or shortness of breath and was in no apparent distress. She also administered an ACCU Check which showed 101 mg/dL blood glucose level and administered Metformin 1000 mg/dL as prescribed. She took his blood pressure 92/67 while sitting with a recheck at 141/77. Except as herein admitted, the allegations of paragraph 59 are denied.

60. Paragraph 60 of the Complaint is a generic, misleading statement and is explicitly denied as to Mr. Lewis' condition on July 13, 2024. Instead, Mr. Lewis's medical records reflect that he was not in any apparent distress, was alert and oriented, and slept most of the day. It is explicitly denied Mr. Lewis had evolving metabolic decompensation on July 13, 2024. Except as herein admitted, the allegations of paragraph 60 are denied.

61. The allegations of paragraph 61 of the Complaint are highly deceptive. When Nurse Dingle saw Mr. Lewis, his blood glucose levels had significantly improved since his detention. Except as herein admitted, the allegations of paragraph 61 are denied.

62. Nurse Calkins was not involved in the interaction alleged in paragraph 62 of the Complaint. According to Mr. Lewis' medical records, Nurse Umeh performed ACCU Check with a blood glucose of 110 mg/dL and administered Buspirone, Escitalopram, Farxiga, Fludrocortisone, Levetiracetam, and Metformin. Mr. Lewis was observed talking with cellmates and using a tablet. His blood pressure was 90/58 then rechecked at 128/78. Mr. Lewis was alert and oriented, continued to use the provided wheelchair, denied chest pain or shortness of breath. His blood pressure was checked against by Nurse Umeh, which was 91/62 then 105/69. Except as herein admitted, the allegations of paragraph 62 are denied.

63. Nurse Calkins was not involved in the interaction alleged in paragraph 63 of the Complaint. According to Mr. Lewis' medical records, Mr. Lewis did not report vomiting until July 16, 2024 at 9:15 PM to Nurse Daodu. Except as herein admitted, allegations of paragraph 63 are denied.

64. Nurse Calkins was not involved in the interaction alleged in paragraph 64 of the Complaint. According to Mr. Lewis' medical records, Nurse Dulay charted that Mr. Lewis' blood sugar was within normal limits, showed no signs or symptoms of hypo or hyperglycemia and was in no apparent distress. Contrary to Plaintiff's false statement, an ACCU Check was administered and Metformin was provided at 6:33 PM. Except as herein admitted, the allegations of paragraph 64 are denied.

65. Nurse Calkins was not involved in the interaction alleged in paragraph 65 of the Complaint. According to Mr. Lewis' medical records, Nurse Umeh took Mr. Lewis' morning blood sugar ACCU Check which was 103 mg/dL before breakfast. Nurse Olaitan saw Mr. Lewis before lunch on July 15, 2024 and his ACCU Check blood glucose level was 120mg/dL and before dinner his ACCU Check blood glucose level was 96 mg/dL. Nurse Olaitan noted that Mr. Lewis was alert and oriented, showed no signs of distress or discomfort and voiced no new concerns. Additionally, that evening, Nurse Duhaney administered night medications and noted Mr. Lewis reported he had an episode of feeling dizzy but felt a little better. She encouraged him to sit before getting up and stand slowly. He showed no signs or symptoms of hypo or hyperglycemia and reported his appetite is adequate. Except as herein admitted, the allegations of paragraph 65 are denied.

66. Nurse Calkins was not involved in the interaction alleged in paragraph 66 of the Complaint. According to Mr. Lewis' medical records, Mr. Lewis did not report any declining symptoms. To the contrary, his medical records showed significantly improved blood glucose levels since detention and that he was alert, calm and cooperative through

July 15, 2024. The first report of vomiting documented in Mr. Lewis' medical records is July 16, 2024 at 9:15 PM to Nurse Daodu. Except as herein admitted, the allegations of paragraph 66 are denied.

67. Nurse Calkins was not involved in the interaction alleged in paragraph 67 of the Complaint and has no knowledge of this alleged interaction. Therefore, the allegations of paragraph 67 are denied.

68. The allegations of paragraph 68 of the Complaint are denied.

69. Nurse Calkins was not involved in the interaction alleged in paragraph 69 of the Complaint. According to Mr. Lewis' medical records, Nurse Duhaney saw Mr. Lewis the morning of July 16, 2024. She administered an ACCU Check which showed a blood glucose of 112 mg/dL before breakfast and provided his morning medication including Farxiga and Metformin as prescribed. Nurse Olaitan also saw Mr. Lewis and noted he was alert and oriented, would not leave bed easily, complained of neck swelling and recent hospital visit before arrest and signed a release of information to UNC Neurology to establish plan of care. He showed no signs of distress or discomfort and eats and drinks okay. There is nothing in his medical record indicating a report of vomiting or being unable to keep food or water down in Mr. Lewis' medical records from July 9-15, 2024. Except as herein admitted, the allegations of paragraph 69 are denied.

70. Nurse Calkins was not involved in the interaction alleged in paragraph 70 of the Complaint and has no knowledge of this alleged interaction. Therefore, the allegations of paragraph 70 are denied.

71. Nurse Calkins was not involved in the interaction alleged in paragraph 71 of the Complaint. According to Mr. Lewis' medical records, PA Bethea evaluated Mr. Lewis and listened to his complaints of a mass on his neck he had for years. She noted no chest pain, shortness of breath, or headache and that he was showing no signs of acute distress. She indicated she would check if follow-up is needed with UNC Neurology and Cardiology. According to Mr. Lewis' medical records, Mr. Lewis did not report any vomiting or nausea to medical providers until July 16, 2024 at 9:15 PM. Except as herein admitted, the allegations of paragraph 71 are denied.

72. Nurse Calkins was not involved in the interaction alleged in paragraph 72 of the Complaint. According to Mr. Lewis' medical records, Mr. Lewis' ACCU Check before dinner was 120 mg/dL and he was administered medication. At 9:15 PM, Nurse Daodu observed Mr. Lewis appearing very angry and irritable when asked to drink a cup of water. His blood pressure was checked 94/66 mmHg and rechecked 96/66 mmHg. His speech was clear and coherent. For the first time, Mr. Lewis told a medical provider, Nurse Daodu, that he vomits each time he eats or drinks. No distress was noted at that time. Except as herein admitted, the allegations of paragraph 72 are denied.

73. Nurse Calkins was not involved in the interaction alleged in paragraph 73 of the Complaint. According to Mr. Lewis' medical records, at 9:15 PM, Mr. Lewis reported vomiting for the first time to any healthcare provider since his detention began. Nurse Daodu sent Mr. Lewis to the hospital within hours of his exhibiting symptoms of concern. Except as herein admitted, the allegations of paragraph 73 are denied.

74. Nurse Calkins was not involved in the interaction alleged in paragraph 74 of the Complaint. According to Mr. Lewis' medical records, at 2:55 AM on July 17, 2024 an officer reported Mr. Lewis vomited on the floor and Nurse Daodu presented to Mr. Lewis' cell. She noted a moderate amount of vomit and took his vital signs, including an ACCU Check showing 164 mg/dL. He was provided Ondansetron for his nausea and vomiting and provided a basin. Except as herein admitted, the allegations of paragraph 74 are denied.

75. Nurse Calkins was not involved in the interaction alleged in paragraph 75 of the Complaint. According to Mr. Lewis' medical records, Nurse Daodu returned at 3:10 AM to check on Mr. Lewis and noted vomit was in the basin. She administered IV Phenergan for nausea at 3:15 AM. Except as herein admitted, the allegations of paragraph 75 are denied.

76. Nurse Calkins was not involved in the interaction alleged in paragraph 76 of the Complaint. According to Mr. Lewis' medical records, Nurse Daodu returned at 5:05 AM to check on Mr. Lewis and noted dark colored "like coffee ground" vomit in the basin. Mr. Lewis for the first time complained that he could not breathe as he laid down but exhibited no signs of diaphoresis or discoloration of his skin. She encouraged him to sit up and he refused. She notified the on-call provider and gave the direction to send him to Wake Med Emergency by car. Except as herein admitted, the allegations of paragraph 76 are denied.

77. The allegations of paragraph 77 are admitted.

78-81. Nurse Calkins does not have access to Mr. Lewis' medical records from Wake Med and cannot speak to the information contained therein. Therefore, the allegations of paragraphs 78-81 are denied.

82. Nurse Calkins admits Mr. Lewis' medical examiner report states his probable cause of death is complications of euglycemic ketoacidosis due to diabetes mellitus. Except as herein admitted, the allegations of paragraph 82 are denied.

83-87. The allegations of paragraphs 83-87 are immaterial and hearsay attempting to infer wrongdoing here from incidents or lawsuits not related to this action. These allegations are the subject of Defendants' Motion to Strike. To the extent any lawsuits exist, those are a matter of public record. The allegations of paragraphs 83-87 are denied.

88-89. The allegations of paragraphs 88-89 are not directed at Nurse Calkins and are denied based on a lack of information sufficient to admit or deny the allegations.

90. With regard to the allegations of paragraph 90 of the Complaint, Nurse Calkins admits diabetes is a medical condition that may be supervised by a medical provider but specifically denies that Mr. Lewis was not carefully managed and under the supervision of medical providers during his detention. Except as herein admitted, the allegations of paragraph 90 are denied.

91. With regard to the allegations of paragraph 91 of the Complaint, Nurse Calkins does not make policies for treating diabetic inmates or training or supervising staff to care for inmates. The allegations of paragraph 91 are denied.

92. With regard to the allegations of paragraph 92 of the Complaint, Nurse Calkins admits the American Diabetes Association authors suggested policies. Except as herein admitted, the allegations of paragraph 92 are denied.

93-95. With regard to the allegations of paragraphs 93-95 of the Complaint, the American Diabetes Association Position Statement is the best evidence of its contents. Except as herein admitted, the allegations of paragraphs 93-95 are denied.

96. With regard to the allegations of paragraph 96 of the Complaint, Nurse Calkins admits Mr. Lewis was on Farxiga and was monitored for a change in condition throughout his detention. Notably, until 9:15 PM on July 16, 2024, Mr. Lewis' blood sugar levels improved from date of detention and Mr. Lewis did not complain of or show no signs of nausea or vomiting to any medical provider. When Mr. Lewis did exhibit symptoms, he was monitored and referred to the Wake Med Emergency Dept. within hours. Except as herein admitted, the allegations of paragraph 96 are denied.

97-98. With regard to the allegations of paragraphs 97-98 of the Complaint, Nurse Calkins does not maintain policies and is unaware of Plaintiff's alleged request for applicable policies. Except as herein admitted, the allegations of paragraphs 97-98 are denied.

99. Nurse Calkins re-alleges and incorporates by reference her responses paragraphs 1-98 of the Complaint.

100. With regard to the allegations of paragraph 100 of the Complaint, Nurse Calkins admits Mr. Lewis was a pre-trial detainee under arrest for taking indecent liberties with a minor under the age of 13 and for first degree child sexual assault and in

the custody of the Wake County Sheriff. He had such rights as were given to him by the laws of the United States of America and the State of North Carolina. Except as herein admitted, the allegations of paragraph 100 are denied.

101-105. Nurse Calkins denies the allegations of paragraphs 101-105 of the Complaint.

106. Nurse Calkins re-alleges and incorporates by reference her responses paragraphs 1-105 of the Complaint.

107-113.The allegations of paragraphs 107-113 of the Complaint are not directed at Nurse Calkins and no response is required. To the extent a response is required, the allegations of paragraphs 107-113 are denied.

114. Nurse Calkins re-alleges and incorporates by reference her responses paragraphs 1-113 of the Complaint.

115-124. Nurse Calkins denies the allegations of paragraphs 115-124 of the Complaint.

125. Nurse Calkins re-alleges and incorporates by reference her responses paragraphs 1-124 of the Complaint.

126-132. The allegations of paragraphs 126-132 of the Complaint are not directed at Nurse Calkins and no response is required. To the extent a response is required, the allegations of paragraphs 126-132 are denied.

133. Nurse Calkins re-alleges and incorporates by reference her responses paragraphs 1-132 of the Complaint.

134-138. The allegations of paragraphs 134-138 of the Complaint are not directed at Nurse Calkins and no response is required. To the extent a response is required, the allegations of paragraphs 134-138 are denied.

139. Nurse Calkins re-alleges and incorporates by reference her responses paragraphs 1-138 of the Complaint.

140-144.The allegations of paragraphs 140-144 of the Complaint are denied.

**THIRD DEFENSE**

Nurse Calkins pleads the defenses of governmental, public official and qualified immunity to the fullest extent allowed by law.

**FOURTH DEFENSE**

To the extent Plaintiff is seeking damages from this answering Defendant in some capacity other than her official capacity, Defendant is entitled to qualified immunity since she was exercising her discretion in that capacity on behalf of the government.

**FIFTH DEFENSE**

To the extent this answering Defendant is found to be negligent, which is again denied, then this answering Defendant asserts the superseding and intervening negligence of third parties as the proximate cause of Decedent's death, barring all claims against this Defendant.

**SIXTH DEFENSE**

To the extent Nurse Calkins is determined to have been negligent, which is again denied, then the alleged, but denied, negligence of Nurse Calkins is barred by the

contributory negligence of Plaintiff's decedent. In support of this defense, Nurse Calkins alleges as follows:

1. Plaintiff's decedent failed to manage diabetes mellitus prior to incarceration;
2. To the extent Plaintiff's decedent suffered vomiting and nausea before the night of July 16, 2024, Plaintiff's decedent failed to report this information to his medical providers;
3. Upon information and belief, the Plaintiff's decedent failed to follow the recommended course of care from his medical providers;
4. Such other and further instances of contributory negligence as will be determined during discovery.
5. The negligent conduct of Plaintiff's decedent was a proximate cause of his death and constitutes a complete bar to Plaintiff's recovery in this matter.

## SEVENTH DEFENSE

Any allegation made in Plaintiff's Complaint not expressly admitted in Nurse Calkins's Answer is denied.

WHEREFORE, having responded to all of the allegations of Plaintiff's Complaint, Defendant prays the Court as follows:

1. That Plaintiff have and recover nothing of Defendant;
2. That Defendant's costs and attorneys' fees as allowed by law, including, but not limited to, 42 U.S.C. § 1988, be taxed to Plaintiff;
3. For a trial by jury on all issues so triable herein; and

4. For such other and further relief as the Court deems just and proper.

This the 28th day of September, 2026.

**TEAGUE CAMPBELL DENNIS & GORHAM, LLP**

BY: /s/ *J. Matthew Little*

J. Matthew Little
N.C. State Bar No. 20032
Kasey C. McCalla
N.C. State Bar No. 59274
P.O. Box 19207
Raleigh, NC 27619-9207
Telephone: (919) 873-0166
Facsimile: (919) 873-1814
Emails: mlittle@teaguecampbell.com
kmccalla@teaguecampbell.com
***Attorneys for Defendants Bethea, Calkins, Villareal, Barjon, Thant, Olaitan, Anumudu, Duhaney, Umeh, Dingle, Dulay, and Daodu***

This is to certify that the undersigned has this date served the foregoing document in the above-entitled action upon all other parties to this cause via the CM/ECF system and via email addressed to the attorney or attorneys for said parties as follows:

Elliot S. Abrams
Cheshire Parker Schneider & Abrams, PLLC
P.O. Box 1029
Raleigh, NC 27602
Elliot.abrams@cheshirepark.com
***Attorney for Plaintiff***

Kathryn M. Ali
Elizabeth C. Lockwood
Meghan Palmer
Ali & Lockwood LLP
501 H Street NE, Suite 200
Washington, DC 20002
Katie.ali@alilockwood.com
Liz.lockwood@alilockwood.com
Meghan.palmer@alilockwood.com
***Pro Hac Vice for Plaintiff***

Vanessa Curtis Duncan
Wake County Sheriff's Office
330 S Salisbury St
Raleigh, NC 27602
Vanessa.Duncan@wake.gov
***Attorney for Sheriff Willie Rowe and Gene Dail Butler, Jr.***

Roger A. Askew
Patrick Joseph Scott
Wake County Attorney's Office
Post Office Box 550
Raleigh, NC 27602
Roger.Askew@wake.gov
Patrick.Scott@wake.gov
***Attorneys for Wake County***

Jonathan D. Patton
Huff Powell Bailey
3737 Glenwood Avenue Ste 370
Raleigh, NC 27612
Jpatton@huffpowellbailey.com
***Attorney for Obinnaya C. Umesi, M.D.***

This the 28th day of September, 2026.

**TEAGUE CAMPBELL DENNIS & GORHAM, LLP**

BY: */s/ J. Matthew Little*